**MILLER INDUSTRIES, INC., Joe N. Hendrix Co., Old Feller, Inc., J & G, Inc., Plaintiffs,**

v.

**CATERPILLAR TRACTOR CO., and Burford Equipment Co., Defendants,**

**John N. Magoteaux, Intervenor.**

Civ. A. No. 78–70–H.

United States District Court,
S. D. Alabama, S. D.

Aug. 13, 1980.

A. Clay Rankin, III, and J. Hodge Alves, III, Mobile, Ala., for plaintiffs and intervenor.

James W. Garrett, Jr., and Robert A. Huffaker, Montgomery, Ala., for Burford Equipment Co.

William H. Hardie, Jr., Mobile, Ala., for Caterpillar Tractor Co.

MEMORANDUM DECISION

ARNOW, District Judge.

This action was originally tried without a jury by The Honorable W. B. Hand, United States District Judge for the Southern District of Alabama. Judgment was entered in favor of plaintiffs (Miller), 473 F.Supp. 1147, and defendants Caterpillar Tractor Company (Caterpillar) and Burford Equipment Company (Burford) appealed.

During the pendency of the appeal the Fifth Circuit rendered its decision in the case of *Potashnick v. Port City Construction Co.*, 609 F.2d 1101 (5th Cir. 1980), which addressed, in part, the issue of the disqualification of Judge Hand to consider a case in which the plaintiff was represented by the Mobile law firm of Hand, Arendall, Bedsole, Greaves and Johnston (Hand, Arendall). Judge Hand had been a partner in Hand, Arendall prior to his appointment to the federal bench. Hand, Arendall represent Miller in this litigation.

Following *Potashnick*, Burford filed its motion in Fifth Circuit seeking reversal in this case or, in the alternative, the remandment of the case for consideration of the issue of disqualification. In an order entered on March 31, 1980, Fifth Circuit remanded the case to the district court for consideration by a judge other than the original trial judge. The case was assigned to this judge for consideration of that issue.

Judge Hand's father, Charles Hand, had been a senior partner in Hand, Arendall for many years, although during the pendency of this litigation he was in "of counsel" status until his death in March of 1980. In its motion in Fifth Circuit, Burford focused on this relationship. Before this court, while in briefs submitted their approaches are somewhat different, Burford and Caterpillar contend Judge Hand should have disqualified himself from hearing this action because of three things; first, the relationship of his father with Hand, Arendall; second, his personal relationship with Hand, Arendall; and, third, his relationship with his law clerk who continued to work on this case as law clerk after having accepted an offer of future employment by Hand, Arendall. Miller contends disqualification is not required.

In conference before this court the parties, commendably, agreed that they could and would be able to agree and stipulate on all the facts required for decision. They have filed a lengthy stipulation of facts; the facts which this court finds relevant are discussed in this decision.

At the outset it should be emphasized that there is no issue presented of actual prejudice, bias or misconduct by Judge Hand, the law clerk, or attorneys for Miller. Both through their stipulations of fact and briefs, the parties agree there is no shred of evidence of actual prejudice, bias, or misconduct by any such persons.

Rehearing in *Potashnick* was denied and a petition for certiorari to the United States Supreme Court has been filed but has not been ruled upon, according to this court's understanding. It is also this court's understanding that petition for certiorari on the order of remand has also been filed but has not yet been ruled upon. In this decision, this court travels on the assumption *Potashnick* is viable law, at least in Fifth Circuit, recognizing action by the Supreme Court might subsequently alter or affect the decision.

## A. The Judge's Father

Judge Hand's father, Mr. Charles C. Hand, was a partner in the Hand, Arendall firm from its inception through the year 1976 but ceased being a partner as of January 1, 1977. From January 1, 1977, until his death at age 89 in March of 1980, Mr. Hand was "of counsel" with Hand, Arendall, during which period of time he was paid $12,000 annually and provided with an office, a parking space, the use of one of the partner's secretaries whenever he desired, and dues at a club. After January 1, 1977, he did not participate in partnership meetings or decisions and he had no right to vote in such meetings or decisions. He was essentially retired certainly by January 1, 1977 and, in fact, some time well before then.

Mr. Hand did not participate in this litigation and no contention is raised that Judge Hand should have disqualified himself because his father was an attorney in the litigation. Instead, Burford and Caterpillar contend that the trial judge should have disqualified himself because his father was "known by the judge to have an interest that could be substantially affected by the outcome of the proceeding" within the meaning of 28 U.S.C. § 455(b)(5)(iii).

86

Contrary to the factual situation presented in *Potashnick*, Mr. Charles Hand was not a partner in Hand, Arendall during this litigation. He was "of counsel" to the firm. He had no percentage interest in the firm; he was paid fixed compensation. He had no financial interest at stake, nor did he, as in *Potashnick*, have a discernible interest in the firm's reputation, its relationship with its clients, and its ability to attract new clients.

In *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456 (5th Cir. 1977), the court held that the status of the judge's son as an associate in the law firm did not mandate disqualification.

There is even less reason to hold Mr. Hand's status mandates disqualification. In *Weinberger* the associate's salary interest was held to be too remote to fall under the "financial" interest prohibition. While its amount does not appear from the decision, it is reasonable to assume it was at least equal to, and probably greater than, Mr. Hand's compensation. Hand, Arendall is a successful 33 member firm; it boggles the imagination to assume that any financial interest Mr. Hand had in this litigation could be affected in any way, much less "substantially", by the outcome of the proceedings.

While the "other interest" aspect of the statute is not discussed in *Weinberger*, an associate in a law firm obviously must have some, and certainly more, interest in the firm's ongoing progress, reputation and ability to attract and keep clients than a former partner in his late 80's, essentially retired, and in "of counsel" status.

There is no basis for concluding that Judge Hand should have recused himself because of his father's position with Hand, Arendall. Mr. Hand had no interest that could be substantially affected by the outcome of the proceeding within the meaning of 28 U.S.C. § 455(b)(5)(iii).

B. *The Judge's Relationship With Hand, Arendall*

■ Contentions of Burford and Caterpillar under this are presented under 28 U.S.C. § 455(a), which provides that a judge shall disqualify himself in any proceeding "in which his impartiality might reasonably be questioned."

In support of their contentions, they point out that Judge Hand had entered into various investments with certain of his partners which he continued to maintain after his appointment as a district judge and during the pendency of this litigation. While these investments were primarily passive in nature they did require, from time to time, the preparation and execution of various legal instruments such as deeds and mortgages, and other instruments, in the management of the properties. Required instruments were prepared by attorneys with Hand, Arendall and submitted to Judge Hand and the other investors for execution. Some were so prepared and executed by Judge Hand during the pendency of this litigation.

Paul Brock, of Hand, Arendall, represented Judge Hand and others named as defendants in a law suit settled on July 1, 1978, after this litigation commenced, although approximately a year prior to the trial and judgment in this suit.

In May of 1979, at Judge Hand's request, a lawyer with Hand, Arendall prepared a deed, executed by Judge Hand, transferring some property Judge Hand owned on Dauphin Island. In 1980 Charles Arendall, of Hand, Arendall, prepared a deed for all the owners, including Judge Hand, in connection with the sale of property owned by them with the sale consummated and the proceeds distributed among the owners.

Burford, in brief before this court, includes not only these matters, but refers to the situation involving the judge's father, and the law clerk. The law clerk's situation is discussed subsequently in more detail in this decision. Burford states:

The contention of Burford that the impartiality of the trial judge might reasonably be questioned springs from a combination of factual circumstances previously addressed in this brief, none of which in or of itself might be sufficient to re-

quire disqualification but all of which when considered in their totality compel the conclusion.

Caterpillar's approach is somewhat different. It focuses primarily on the law clerk matter, pointing out it did not know of the law clerk's accepting future employment with Hand, Arendall until after he had gone to work with the firm. It points out its counsel were aware of Judge Hand's personal relationship with his former firm and that it would not assert his continuing relationship as a friend and client to his former law firm as grounds for disqualification were that circumstance to stand alone.

Caterpillar agrees this case differs from *Potashnick* where disqualification was required in the situation where the trial attorney for plaintiff had business relationships with the trial judge. It does contend, however, that at least eleven attorneys at Hand, Arendall represented, shared investments with, had confidential relations with, or retained business interests with Judge Hand since he was appointed to the bench, and that this means his impartiality might reasonably be questioned.

Respecting these contentions, the factual situation here presented to this court is significantly different from the situation in *Potashnick*. In it, the attorney from Hand, Arendall appearing before Judge Hand for Potashnick was Paul Brock. There were business dealings between him and Judge Hand; while the suit was pending he represented Judge Hand in several unrelated matters.

The court in *Potashnick* held:

We believe that a reasonable person with knowledge of the business investments of Judge Hand and Paul Brock, and the legal representation of the judge by Brock, might very well question the judge's impartiality in a trial involving Paul Brock as chief counsel for a litigant.

In the instant case, none of the attorneys from Hand, Arendall involved and appearing in the litigation were investors in any property in which Judge Hand was an investor, and none of them represented him in any litigation in which he was a party. Nor have any of them done any legal work for Judge Hand.

The Hand, Arendall firm had approximately 33 lawyers during the pendency of this litigation. As this court understands the stipulation of facts, only 3 of them ever appeared in this litigation in any manner, either personally in court or on the pleadings.

It is not unusual for a lawyer coming to the bench from a law firm to do so with investments shared with his former partners. It is not unusual for him to have formed close and abiding friendships with members of his former firm or, for that matter, with other members of the bar. It is not unusual that a judge might seek his former law firm when he is in need of legal representation. Such activities here create no more an appearance of impartiality than did the judge's acquaintance or friendship with witnesses and defense counsel in *Parrish v. Board of Commissioners*, 524 F.2d 98 (5th Cir. 1975).

As the Fifth Circuit pointed out in *Davis v. Board of School Commissioners*, 517 F.2d 1044 (5th Cir. 1975), under 28 U.S.C. § 455(a), disqualification should be determined with the emphasis focused on the party involved rather than counsel. Here all parties agree there is no doubt concerning the judge's impartiality in his handling of the case and no question of any relationship with any of the parties is involved. Burford does not appear to contend that any of the circumstances standing alone is sufficient to mandate disqualification; it argues that the totality of circumstances requires disqualification.

In determining the necessity for disqualification, all circumstances bearing upon it should be considered. But that does not mean that various circumstances, each insufficient standing alone, mandates sufficiency in totality. Under the factual situation here presented, holding that these various circumstances in combination require disqualification would be tantamount to holding that adding several zeroes together would produce something more than zero.

Caterpillar's contention that at least 11 attorneys of Hand, Arendall were involved with Judge Hand since he was appointed to the bench mandates disqualification is equally unimpressive. Conceding arguendo its factual validity,[1] it does not present in the circumstances of this case any reasonable basis to question Judge Hand's impartiality.

As the legislative history (H.R.Rep.No. 93–1453 93d Cong., 2d Sess. *reprinted in* [1974] U.S.Code Cong. & Ad.News, 6351, 6355, 6354–55) points out, each judge must be alert to avoid the possibility that those who would question his impartiality are in reality seeking to avoid the consequences of his expected adverse decision and that "disqualification for lack of impartiality must have a *reasonable* basis." (emphasis in the original).

Here these contentions of Burford and Caterpillar are presented from the background of an adverse judgment.

This court does not question that they are presented in good faith zeal of advocacy. But it does conclude that, in the factual situation here presented by them, mandating disqualification would be nothing more than giving to these litigants a second opportunity to try a case before a different judge without their being entitled to that opportunity.

This court concludes these contentions of these defendants do not mandate or justify disqualification of the trial judge under 28 U.S.C. § 455(a).

C. *The Judge's Law Clerk*

█ To this court the most troublesome aspect of the situation here presented is found in the circumstances surrounding the law clerk.

The law clerk with Judge Hand from June 13, 1977, through June 30, 1979, worked with Judge Hand on this case while in his employ. In late November, 1978,

Hand, Arendall offered the law clerk an associate position to commence at the termination of his employment with Judge Hand. In December of 1978 he advised both Hand, Arendall and Judge Hand that he accepted the offer. During the period from December of 1978, he continued to work with Judge Hand on this case until he left to go to work with Hand, Arendall in July, 1979. This case was tried before Judge Hand without jury on June 25 and 26, 1979, with judgment entered in favor of plaintiffs on July 11, 1979.

Burford and Caterpillar contend this mandates disqualification under 28 U.S.C. § 455(a).

In *Kennedy v. Great Atlantic & Pacific Tea Co., Inc.*, 551 F.2d 593, 596 (5th Cir. 1977), the judge's law clerk testified concerning a view of the premises forming the subject matter of the litigation. In reversing the judgment, the Fifth Circuit equated the law clerk with the trial judge in determining whether the law clerk's action was improper.

*Fredonia Broadcasting Corp., Inc. v. RCA Corp.*, 569 F.2d 251 (5th Cir.), *cert. denied*, 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 167 (1978), sets forth principles applicable here, although the case is factually different. In *Fredonia*, the trial judge's law clerk worked on a case while he was a law clerk; after he commenced work as an associate in the law firm he worked on the same case he had worked on as a law clerk with the judge.

The court pointed out the possibility that Fredonia might have an improper advantage because of its counsel's former association with the judge. To this court that same reasoning should apply here. When the law clerk has accepted employment with a law firm, there is the possibility that continuing to work on a case before the trial judge in which the law firm is counsel might present an unfair advantage to the party represented by that law firm.

---

1. Apparently, as an afterthought, this suggestion is made in proposed opinion submitted by Caterpillar and is not discussed in its brief. Nor can this court tell from the stipulation of facts that it is factually correct. It assumes it

is, pointing out only that such contention might have more properly focused on the numbers in Hand, Arendall having such relationship with the judge during the pendency of this litigation.

It should be emphasized there is not even suggestion by the parties, or the record, of any actual impropriety by the law clerk, the judge, or the parties. Moreover, contrary to *Fredonia*, the law clerk did not participate in the case as an associate with Hand, Arendall. But under the statute and the cases, these factual matters so clearly apparent here do not provide the test or foreclose inquiry. As *Fredonia*, in its detailed analysis and citation of decisions points out, there is here concern for the "purity of the judicial process and its institution" and for the established doctrine that "justice must satisfy the appearance of justice."

Caterpillar contends:

If a judge were to announce his intention to leave the bench and return to practice with a private firm, clearly it would be improper for him to sit as a judge in a bench trial in which his future firm appeared for one of the parties. If the law clerk's duty to avoid the appearance of impropriety is equivalent to the trial judge's duty, then a law clerk should not participate in litigation in which his future employer appears as counsel.

To this court, that contention has merit and is proper. Here the law clerk's continuing participation with the judge in the case in which his future employers were counsel presented a situation in which disqualification was mandated under 28 U.S.C. § 455(a).

No case has been cited by the parties, nor has this court's research uncovered, any case in which this particular question was confronted and answered.

The conclusions reached do have some background support.

In A. DiLeo and A. Rubin, Law Clerk Handbook, § 2.250, at 56 (Federal Judicial Center 1977), there is a statement:

When a clerk has accepted a position with an attorney or with a firm, that clerk should cease his future involvement in those cases where the future employers have an interest.

While the Foreward of the Handbook points out that the views expressed are those of the authors—one of whom is Judge Alvin Rubin—and not necessarily those of the Federal Judicial Center, it still remains that the Handbook is disseminated nationwide for law clerks and for judges and, therefore, is of considerable import.

In *Reddy v. Jones*, 419 F.Supp. 1391 (W.D.N.C.1976), the judge held that disqualification was not required because one of the judge's law clerks accepted employment with lawyers representing the petitioners. The judge pointed out:

The unvaried custom which I have followed since I was first appointed has been that if a law clerk accepts future employment with a law firm, he is immediately taken off all work, conference hearings or other activity, including the delivery of messages, in cases being tried in this court by his prospective employers.

In *Simonson v. General Motors Corp.*, 425 F.Supp. 574 (E.D.Pa.1976), a law student assigned to the judge as a judicial intern was also employed as a legal intern by a defendant's law firm. When the judge became aware of the legal employment, he took steps immediately to see that the student had no further participation with the case, either in the judge's office or in the office of the law firm employing him. Because of this and other circumstances, he reached the conclusion that a reasonable man could not question his impartiality.

### D. *Timeliness*

■ Miller, citing *In re International Business Machines*, 618 F.2d 923, 932–34 (2d Cir. 1980) contends the motions to disqualify Judge Hand came too late.

Because this court has concluded only the law clerk situation mandated disqualification, it need consider the timeliness contention only with respect to that matter.

Counsel for the defendants did not know that the law clerk has received or had accepted an offer of employment from Hand, Arendall prior to July 11, 1979. They acquired that knowledge on or before August 3, 1979. They never asked, nor were they informed, the dates he was offered a position at Hand, Arendall or when he accepted the position until depositions were taken of

Hand, Arendall attorneys in June of 1980. Promptly thereafter the issue was raised in this court.

Fifth Circuit may or may not agree with the Second Circuit in its reasoning in the case cited above. Assuming, however, it would do so, and applying these principles to this case, here there is no untimeliness sufficient to bar Burford and Caterpillar from pursuing the reasons for disqualification.

This issue, dealing with 455(a) disqualification, is one that, under 28 U.S.C. § 455(e), might be waived provided it is preceded by a full disclosure on the record of the basis of disqualification. That full disclosure was not made on the record to defendants until June of 1980 and they took prompt action afterwards.

The delay in *International Business Machines* went over a period of years, and the case was an extremely complex and extensive one. The factual situation here presented is entirely different.

Had Hand, Arendall avoided offering employment to the law clerk so long as he was working with Judge Hand, this problem could have been avoided. Had Hand, Arendall, when first considering him for employment, in conference with defendants, the judge and the law clerk, pointed out that it was so doing, the problem might have been avoided. But Hand, Arendall did not do so. Untimeliness here rests with Miller, and not Burford or Caterpillar.

**E.** *Judge Hand's Order Of February 5, 1980.*

Judge Hand entered an order on February 9, 1980, stating that if *Potashnick* became final, he would set aside his judgment and reschedule the case for trial before another judge. In reaching this decision, this court has not been unmindful of that order and the discretion vested in the trial judge in making determination of disqualification.

To this court, Judge Hand, concerned over the strong disqualification thrust of

*Potashnick*, may have understandably overreacted to *Potashnick.* In any event, under Fifth Circuit's order, these determinations are required to be made by a judge other than Judge Hand and this is the judge to whom the matter has been assigned to make the determination.[2] As this court understands the order, it must make the disqualification determinations that normally initially would be made by Judge Hand, and stands in his shoes for that purpose.

**F.** *Conclusion*

It is undisputed that all parties to this case hold Judge Hand in the greatest professional esteem, that the trial was fairly conducted, and that the decision does not evidence bias or prejudice. Nonetheless, this court reluctantly concludes, for the reasons pointed out, the law clerk's continued participation in the case after he had accepted employment with Miller's law firm mandates disqualification of the trial judge to avoid the appearance of impropriety.

As directed by Fifth Circuit's remand order, having so found, this court will enter an order vacating the judgment entered in this action on July 11, 1979.

---

**2.** Perhaps this judge should extend a welcome to the club to Judge Hand. He has had the experience of Fifth Circuit reversing an order

of his and directing that on remand the matter be determined by another judge.