GARY BRASWELL & ASSOCIATES, INC., Appellee,

v.

PIEDMONT INDUSTRIES, INC., Appellant.

No. 84–2164.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1985.

Decided Sept. 25, 1985.

Floyd M. Thomas, Jr., El Dorado, Ark., for appellant.

David F. Guthrie, El Dorado, Ark., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

This case involves a lawsuit by Gary Braswell & Associates (Braswell) against Piedmont Industries (Piedmont) for breach of contract. Braswell contended at trial that Piedmont had agreed to pay Braswell $30,000 per year plus $200 monthly showroom support, in return for which Braswell was to become Piedmont's agent for a certain line of clothing in Arkansas, Texas, Louisiana, Oklahoma, and Mississippi. Piedmont counterclaimed for Braswell's alleged conversion of $9,418 of clothing samples.

Following a non-jury trial, the District Court[1] found some merit in both Braswell's claim and Piedmont's counterclaim, and awarded Braswell $17,187.91.[2] Piedmont contends on appeal that the District Court: 1) erred in failing to find that the contract with Braswell was barred by the statute of frauds; 2) erred in failing to find that Piedmont was entitled to terminate the contract at will; 3) erred in finding that Braswell had received only $10,503.09 from Piedmont prior to the breach; and 4) erred in valuing the amount of Piedmont's counterclaim. We affirm.

The District Court stated initially that under Arkansas law, an oral contract may be removed from the statute of frauds by clear and convincing proof of the existence of the contract, citing *Bramlett v. Selman*, 268 Ark. 457, 597 S.W.2d 80, 83

---

1. The Honorable Oren Harris, Senior United States District Judge for the Eastern District of Arkansas.

2. The District Court awarded Braswell $32,400 ($30,000 guarantee plus $2,400 showroom support) and reduced that amount by $15,212.09 ($10,503.09 for money already paid by Pied-

(1980).[3] *See also Pfeifer v. Raper*, 253 Ark. 438, 486 S.W.2d 524, 524 (1972); *Hudspeth v. Thomas*, 214 Ark. 347, 216 S.W.2d 389, 389 (1949). The District Court then held that Braswell had clearly and convincingly established the existence of an oral contract with Piedmont for a one-year period, during which time Piedmont was to pay Braswell a $30,000 guarantee plus $2,400 in showroom support. We have examined the record and we cannot say that the District Court's finding that the oral contract was clearly and convincingly proved is clearly erroneous. Thus, we conclude that the District Court did not err in holding that the contract was taken out of the statute of frauds.

■ Because we have concluded that the District Court did not err in finding that the evidence clearly and convincingly established a one-year contract, we must likewise reject Piedmont's second contention that it was entitled to terminate the contract at its will. Only a contract of indefinite duration may be so terminated. *Griffin v. Erickson*, 277 Ark. 433, 642 S.W.2d 308, 310 (1982).

With respect to Piedmont's third contention, the District Court held that it was undisputed that the amount of money Braswell received before termination was $10,503.09. Braswell testified that his deposits of Piedmont checks totaled $10,503.09. Piedmont contends that a form filed by Piedmont with the Internal Revenue Service, introduced at trial by Braswell, shows that Piedmont had actually paid Braswell $15,249.25.

■ Piedmont's counsel attempted to impeach Braswell's claim that he had been paid only $10,503.09 with Piedmont's Internal Revenue Service form that indicated that Braswell had actually received $15,-249.25 from Piedmont. Braswell offered to explain the difference between the amounts, but Piedmont's counsel did not pursue the matter. Piedmont did not put on any other evidence that tended to show that it had actually paid Braswell $15,-249.25 in cash pursuant to the $30,000 guarantee.[4] We therefore cannot conclude that the District Court erred in finding that the amount Braswell had received was $10,503.09.

■ The first part of Piedmont's final contention is that the District Court erred in not awarding Piedmont $9,418 on the unreturned sample merchandise. The District Court determined that, as a matter of policy, Piedmont charged its agents half the value of sample merchandise, and held that Piedmont was entitled to recover from Braswell $4,709, which is half the value of the merchandise for which Braswell had not paid. We have reviewed the record, and we are convinced that the District Court did not err in so holding.

The second part of Piedmont's final contention is that the District Court erred in not awarding Piedmont prejudgment interest on the value of its counterclaim. Piedmont contends that under Arkansas law, it is entitled to prejudgment interest because the dollar amount of Piedmont's damages was immediately ascertainable. *See Wooten v. McClendon*, 272 Ark. 61, 612 S.W.2d 105, 106 (1981). Braswell, on the other hand, concedes that it owed Piedmont $4,709, but characterized that amount merely as a set-off against its $32,400 recovery, on which no prejudgment interest should be awarded because the nature of the claims and counterclaims in this action

mont plus $4,709 for unreturned sample merchandise).

**3.** A district court's determination concerning the law of the state in which it sits is, of course, entitled to considerable deference. *See In re O'Neill's Shannon Village*, 750 F.2d 679, 681 (8th Cir.1984).

**4.** We note with interest that the difference between the $10,503.09 amount Braswell testified that he had been paid, and the $15,249.25 amount Piedmont had recorded on an Internal Revenue Service form as having been paid to Braswell, comes to approximately $4,700. It would thus appear that Piedmont accounted for the clothing samples by charging them against Braswell's account, and did not view them as specific items of property that it wanted returned.

made the amount of damages incapable of determination. *Id.*

The District Court did not specifically address the question of prejudgment interest. Without appropriate findings by the District Court, we cannot say, as a matter of law, whether Piedmont is entitled to prejudgment interest on its award. The decision as to whether prejudgment interest should be awarded should be made, in the first instance, by the District Court.

The judgment of the District Court is affirmed, except as to the issue of prejudgment interest, and the case is remanded to the District Court for determination of that issue.