Scott William KATZ, Plaintiff,

v.

Jake W. LOONEY, et al., Defendants.

Civ. No. 90–5016.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

March 19, 1990.

Scott William Katz, Fayetteville, Ark., pro se.

Ginger Crisp, Fayetteville, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Plaintiff, Scott William Katz, filed suit against defendants, "Board of Trustees of University of Arkansas d/b/a the University of Arkansas, Fayetteville, Arkansas, Jake W. Looney, Phillip E. Norvell, Charles N. Carnes, Lonnie R. Beard, Paul Schwartz, and Donald B. Pedersen." In his complaint he alleges that he was enrolled in the graduate agricultural law program at the University of Arkansas, "on or about July 1, 1990" (sic). It appears from other pleadings in the file that the actual date of his enrollment was in July, 1989. It appears from his complaint and documents attached to his complaint that defendant, Dr. Donald B. Pedersen, director of the program, learned in early February, 1990, that plaintiff had been disbarred from the practice of law in Florida and Oklahoma, a fact that plaintiff admitted in paragraph 11 of his complaint.

On February 21, 1990, defendant, Jake W. Looney, Dean of the Law School, wrote plaintiff a letter advising that: "the Graduate Legal Studies Committee of the law faculty has submitted a report to me with a recommendation that 'appropriate proceedings be commenced to seek revocation' of your admission to the LL.M. ('or such other disciplinary action as may be appropriate') based upon their review of your application and the materials and statements submitted in support of your application." The letter goes on to say that the review occurred as the result of a recent discovery of his disbarment in both Florida and Oklahoma. Plaintiff was advised that the dean of the law school was referring the committee recommendation to the full law faculty for appropriate action at a hearing scheduled for February 28, 1990.

Apparently the day that he received the letter, plaintiff filed this lawsuit, seeking a temporary restraining order preventing the meeting from going forward, and for "... judgment against all Defendants in a sum not less than $5 million (Five million dollars) and award punitive damages, too".

The motion for preliminary injunction was referred to United States Magistrate, Beverly R. Stites, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 23 VIII(A). Magistrate Stites conducted an evidentiary hearing on March 5, 1990. Apparently the faculty committee hearing previously scheduled for February 28, 1990, was delayed pending the receipt of the magistrate's proposed findings and recommendations. Such proposed findings and recommendations were filed on March 13, 1990, recommending that the preliminary injunction not issue. The parties were advised that they had ten days to file written objections. No such objections have yet been received by this court, but the time to make them has not yet expired.

Contemporaneously with the filing of the complaint, plaintiff moved for a change of venue, claiming that he could not get a fair trial in this venue. The next day he filed a motion to disqualify the undersigned, making the unsubstantiated and untrue allegation that defendant Looney was a personal friend of the judge, and that the judge dislikes plaintiff "due to the fact that the plaintiff sued his friend."

The motion for change of venue and motion to disqualify was denied by order filed March 1, 1990, for the reasons set forth in a letter to plaintiff and the attorney for the defendants dated February 27, 1990.

On March 9, 1990, several days before Magistrate Stites had filed her proposed findings and recommendations, plaintiff filed another motion seeking to disqualify both the undersigned and Magistrate Stites. In respect to the hearing conducted by the magistrate, plaintiff alleged that the hearing was "nothing more than a sham and a proceeding wherein the person named Stites" took certain actions with which he disagreed. He alleges that "both Stites and Waters are too incompetent and too inept to either handle this case and/or to give the plaintiff a fair and impartial trial in this matter." That motion was also denied by order of the court filed March 13, 1990.

Now plaintiff has filed, on March 16, 1990, two additional motions, one denominated, "Motion for Rehearing/Reconsideration of the 3/12/90 Court Order Denying the Recusal Motion", and the other called, "1. Motion for sanctions against Jake W. Looney; 2. Motion for the issuance of a rule to show cause against Jake W. Looney; and 3. Motion for a protective order." Each of these motions are replete with scandalous and impertinent matters, a fact that will be discussed in more detail below.

### Recusal

■ In his new motion asking that this court recuse, he makes the conclusory allegation that "H. Franklin Waters is extremely good friends with all or at least most of the defendants, including: Jake W. Looney and James B. Blair". The facts are, as indicated in the court's letter of February 27, 1990, ruling on the earlier motion, that defendant Looney is, at most, a casual acquaintance of the undersigned and, for the reasons stated in that letter, no reasonable person could believe that

there is any basis for this judge to recuse because one of the defendants is J.W. Looney.

In his renewed motion, plaintiff points out that James B. Blair is a former law partner of the undersigned. He seems to fail to recognize that Mr. Blair is not a party to this lawsuit. He only sued, "Board of Trustees of the University of Arkansas d/b/a the University of Arkansas," apparently in an attempt to obtain judgment against the entity, "University of Arkansas". None of the trustees are individually sued.

It is true, and almost everyone in this area knows that it is true, that Mr. Blair, one of the trustees of the University of Arkansas, was a law partner of the undersigned prior to October 31, 1981, when the undersigned was invested with this office. However, for the reasons stated below, that is no basis for this judge to recuse. As distinguished Judge John E. Miller said in *Investors Thrift Corp. v. Sexton*, 347 F.Supp. 1207, 1211 (W.D.Ark.1972):

> In such a case a Judge may not disqualify himself even if so inclined for the law is that the Judge has the same obligation not to disqualify himself where the showing is not legally sufficient as he has to disqualify himself where the showing is legally sufficient.

Plaintiff did not, as required by Rule 20 of the Rules for the Eastern and Western Districts of Arkansas, accompany his motion with a brief setting forth law supporting his position. Instead, he says in the motion that "the Federal Rules of Civil Procedure are clear that a federal judge must *disqualify* himself if in fact his integrity can be or has been questioned/or the Plaintiff rightfully and justly feels that he cannot receive a fair and impartial trial due to the relationship." (emphasis in original). In the first place, there is nothing in the Federal Rules of Civil Procedure which even remotely says anything like that and, in fact, no provision in relation to recusals is contained in the Federal Rules of Civil Procedure. Instead that is covered by statute and is set forth in 28 U.S.C. § 455(a).

Neither that statute says nor any court interpreting it even come close to saying what plaintiff says the law is.

That provision of law was taken from the provision of the American Bar Association Code of Judicial Conduct. What was then Canon 2 of that Code contained provisions which are almost identical to those now contained in 28 U.S.C. § 455(a). That provision was authoritatively explained by the Reporter for the American Bar Association Committee that drew the Code of Judicial Conduct as follows:

> Any conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's "impartiality might reasonably be questioned" is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety in violation of Canon 2 that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard, as does participation by the judge in the proceeding if he thereby creates the appearance of a lack of impartiality.[1]

As is pointed out by the authors of 13A Wright, Miller & Cooper, *Federal Practice and Procedure: Civil* § 3549 at 612, that interpretation has been widely accepted by the courts. *See* the cases cited at footnote 5 of that article, including *U.S. v. Poludniak*, 657 F.2d 948, 954 (8th Cir.1981), *cert. denied*, 455 U.S. 940, 102 S.Ct. 1431, 71 L.Ed.2d 650 (1982), and *Gilbert v. City of Little Rock*, 722 F.2d 1390 (8th Cir.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984).

As the Court of Appeals for the Eighth Circuit said in *Gilbert, supra*, at 1399:

> The standard for determining the appearance of fact of particular grounds for recusal or disqualification of a trial judge is the same under both statutes. A judge is to take into consideration all circumstances both public and private and determine if a reasonable, uninvolved observer would question the judge's impartiality. *Idaho v. Freeman*,

1. Thode, Reporter's Notes to Code of Judicial Conduct, 1973 pp. 60–61.

507 F.Supp. 706 (D.Idaho 1981). A recusal or disqualification motion is committed to the sound discretion of the trial judge and the standard of review on appeal is whether the judge abused his or her discretion. *In re Federal Skywalk Cases*, 680 F.2d 1175, 1183 (8th Cir.1982), *cert. denied*, 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1983). No such abuse is found here.

Using that test, the court concludes, and believes that any reasonable person would conclude, that plaintiff's new reason for requesting that this court recuse is as void of merit as were the reasons given in the earlier motions.

Taking into consideration, as the law requires, all circumstances, both public and private, the court does not believe that any "uninvolved observer would question the judge's impartiality." *Gilbert, supra*, at 1399. The undersigned took this high office on October 31, 1981, and, thus, has not been associated in the practice of law, or in any other manner, with Mr. Blair for well over eight years. While Mr. Blair and the author of this opinion were partners during a period prior to that time, and were "friends," any person knowing the facts, both public and private, would be aware that Mr. Blair and the undersigned did not have a particularly close personal relationship during that association, and certainly do not at the present time. Any reasonable person, having knowledge of the circumstances, both public and private, would be aware that the undersigned and Mr. Blair, during their association in the practice of law together, seldom if ever engaged in common social endeavors and that, during the more than eight years since the undersigned took the bench, have not visited in each other's homes or associated together in any other way that would indicate anything more than a friendship the likes of which this court hopes and believes that it has with numerous individuals in Arkansas.

Thus, the court is convinced that no reasonable person, having knowledge of the facts, would believe for a moment that the relationship which the undersigned has with Mr. Blair would cause this court to be biased in favor of the defendants in this case. This is especially true since there is no prayer for relief against Mr. Blair individually. He is not even sued and the court doubts that he even knows about this lawsuit.

In view of this, the court believes that it is clear that no person who thinks in a reasonable and logical manner, and who is not unreasonably suspicious of the world around him, would believe that this court might be biased in favor of the defendants simply because James B. Blair, with whom this court practiced more than eight years ago, is one of the several members of the Board of Trustees of the University of Arkansas, one of the defendants in this case. This exact issue was raised in 1986 and the Court of Appeals for this circuit affirmed this court's denial of a similar motion to recuse filed in the case of *Gray v. University of Arkansas. See Gray v. University of Arkansas*, 883 F.2d 1394 (8th Cir.1989).

The motion to recuse will again be denied.

### *Motion for Sanctions, etc.*

In the magistrate's proposed findings and recommendations it is recommended that the motion for a preliminary injunction be denied. No preliminary injunction or restraining order has been issued and this court will not consider issuing one until the objections to the magistrate's findings and recommendations are received. Undoubtedly because of this, plaintiff was notified by letter dated March 15, 1990, that the faculty committee would meet on March 30, 1990, "to consider the report and recommendations of the Graduate Legal Studies Committee relating to your admission to the LL.M. program."

Receipt of this letter by the plaintiff apparently triggered another set of motions including the motion to recuse discussed above. Additionally, plaintiff filed a motion for sanctions against defendant, Looney. This "pleading" is literally filled with scandalous, libelous, and impertinent matters. For example he says that, "Jake W. Looney is totally inept, totally incompe-

tent, and is not even familiar with the Federal Rules of Civil Procedure even though he is supposedly licensed to practice law in the State of Arkansas and is supposedly the dean of the law school at the University of Arkansas." He then says that, "obviously, Jake W. Looney needs to go back to law school and needs to familiarize himself with the case law ... obviously, Jake W. Looney is a complete and total moron and fails to realize that the plaintiff is entitled to appeal the recommendations of any faculty decision." It is said that, "Jake W. Looney still does not know what he is doing and his actions would appear to be in violation of the court rules and the Federal Rules of Civil Procedure".

Not only is the material contained in the motion scandalous, the motion has no merit. While plaintiff says that Looney is violating "court rules" and "Federal Rules of Civil Procedure", he fails to point to any, and the court is not aware of any rules being violated by the setting of the hearing. It may be, after the objections are received, that the court will refuse to accept the magistrate's recommendations an issue and injunction, but the fact is that none has been issued to this point. Thus, none of the defendants have been enjoined from doing anything, so it is at least inaccurate to say that they have violated some unspecified court rule or some unspecified provision of the Federal Rules of Civil Procedure.

The motion is totally without merit, and will be denied.

### Rule 11 Sanctions

■ There is a provision of the Federal Rules of Civil Procedure which the court believes does apply to what has occurred in this case. Rule 11 says that the signature of an attorney or a party on a pleading certifies, among other things, that it is filed with the belief, that after reasonable inquiry, "it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and it is not interposed for any *improper purpose, such as to harass.*" (emphasis supplied). The rule then provides that if it is violated, "the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction ...".

There is absolutely no legitimate basis for the scandalous, impertinent and libelous statements made by plaintiff against one of the defendants, and Magistrate Stites and, in fact, this court. Those statements are strictly personal attacks and don't even arguably address any legitimate issue before the court. Since there is no legitimate purpose for these statements, they must have been made by plaintiff in an attempt to harass, embarrass and humiliate the persons about which they are made. There is no place for this kind of conduct in any court, and this court will not allow it. The conduct of the plaintiff would be bad enough if he was an untrained and uneducated person "off the street", but the file shows that he is trained as a lawyer, albeit a disbarred one, who, in fact, seeks a master's degree in the law.

This case "cries out" for Rule 11 Sanctions, and they will be imposed. Plaintiff says in his motion that he intends to file objections to the magistrate's findings and conclusions. The court will impose monetary sanctions[2] against defendant, but will reserve ruling on the amount of such sanctions until after these objections are received by the court. At that time, an appropriate order will be entered in respect to the imposition of the sanctions.

In the future, the plaintiff will refrain from making, in this court by pleading or

---

**2.** This court believes that it is normally advisable to give recalcitrant attorneys or parties an opportunity to show cause why sanctions should not be imposed, but that is clearly not required by the rule. *See* the Advisory Committee Note to the 1983 Amendments, which is reprinted at 97 F.R.D. 165, 200–201. No hearing is required. *Davis v. Veslan Enterprises*, 765

F.2d 494 (5th Cir.1985); *Rodgers v. Lincoln Towing Serv., Inc.*, 596 F.Supp. 13 (D.C.Ill.1984), *aff'd*, 771 F.2d 194 (7th Cir.1985). Because plaintiff's conduct in this case is particularly egregious, and because he is a person "trained in the law", the court has determined that a hearing would serve no useful purpose.

otherwise, scandalous and impertinent statements or other personal attacks against other parties, the magistrate, or this court. Violation of this order will likely result in dismissal of this case.

Until plaintiff's objections are received, and until the court determines the amount of the monetary sanctions to be imposed and such sanctions are paid, the clerk of the court is ordered and directed to refrain from filing any further pleadings or "papers" submitted by plaintiff, except his objections to the magistrate's proposed findings and recommendations.

A separate order in accordance with the above will be contemporaneously entered.