CERTAIN UNDERWRITERS AT LLOYDS, LONDON WHO ARE MEMBERS OF LLOYD'S SYNDICATES NUMBERED 658, 483, 741, 687, 79, 872, 535, 552, 123, 114, 741, 209, 1023, 309, 872, AND 500, et al.

v.

ORYX ENERGY COMPANY.

No. G–96–306.

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 14, 1996.

James Richard Watkins, Jr., Royston, Rayzor, Vickery & Williams, Galveston, TX, Bradley A. Jackson, Royston, Rayzor, Vickery & Williams, Houston, TX, Edward D. Vickery, Royston, Rayzor, Vickery & Williams, Houston, TX, for plaintiffs.

Jim E. Cowles, Cowles & Thompson, Dallas, TX, B. Michael Bennett, Cowles and Thompson, Dallas, TX, for defendant.

## ORDER DENYING MOTION TO RECUSE

KENT, District Judge.

Now before the Court is the Defendant's September 19, 1996, Motion to Recuse pursuant to 28 U.S.C. § 455(a). At the hearing on October 2, 1996, the Court expressly made an offer to transfer this Motion to Recuse to the Chief Judge of the Southern District of Texas for resolution. Counsel declined that offer. Thus, this Court has very carefully and painstakingly considered the Motion, all supports, the responsive pleadings, the tape of the hearing before the Court, all pleadings herein filed, and all applicable law. For the reasons set forth below, Defendant's Motion to Recuse is hereby **DENIED.**

■ Section 455(a) provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The standard for determining impartiality depends on the source of the judge's alleged prejudice. To the extent that a judge has become biased due to facts that he has learned during a judicial proceeding, he must recuse himself only if fair judgment would be impossible. *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). If the alleged partiality stems from a source other than a judicial proceeding, a judge must recuse himself if a reasonable person, knowing all of the facts, *would* harbor doubts concerning the judge's impartiality. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860–61, 108 S.Ct. 2194, 2203, 100 L.Ed.2d 855 (1988); *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir.1995).

■ Defendant's Motion does not meet the statutory standard of section 455(a), the *Liteky* standard, or the *Liljeberg/Jordan* standard for recusal. In the last paragraph of its Motion, Defendant states its own novel recusal standard:

> Oryx submits that a reasonable person, becoming acquainted with the circumstances cited above, *might harbor doubts* about the judge's impartiality, and therefore, that this case comes within Section 455(a).

*See* Defendant's Motion to Recuse, p. 7 (emphasis added). The Court respectfully rejects this standard. While the Court appreciates that the Defendant does not allege that the Court is not impartial or that it is incapable of being impartial in this case, the Defendant does contend that four factors give rise to an appearance of impartiality: (1) the Court's being a former law partner of Plaintiff's counsel; (2) the Court's statement in an Order regarding the honesty and integrity of Plaintiff's counsel; (3) the apparent partiality comes from an extrajudicial source; and, (4) the totality of the circumstances. The Court now examines each of Defendant's contentions in light of established precedent.

First of all, the Court wants to clarify any misconceptions on the part of the Defendant as to its past relationship with Plaintiff's counsel. Although Mr. Vickery was a former law partner of the Court, they worked in separate offices of the firm, Mr. Vickery in the Houston office, the Court in the Galveston office. As a result, on average, the Court only spoke with Mr. Vickery two to three times a year in group settings for the purposes of handling the administrative functions of the firm. In the fifteen and one-half years that the Court worked for the firm, it worked on only one case together with Mr. Vickery, and then only for an abbreviated period. Throughout that time and since, Mr. Vickery and the Court have not socialized, and Mr. Vickery has never once been in the Court's home or at a social function given by the Court in a personal context. In fact, since leaving the firm over six years ago, Mr. Vickery and the Court have never even had lunch together. In short, this Court has no extensive professional or personal relation-

ship with Mr. Vickery in connection with their law partnership.

Moreover, upon the Court's appointment to the federal bench over six years ago, this Court scrupulously tried to avoid any appearance of impropriety by *sua sponte* recusing itself from *all* Royston, Rayzor, Vickery & Williams ("RRV & W") cases for two calendar years following its appointment and by recusing since that time where the firm has represented a client for whom this Court felt any residual affection. For the last four years, the Court has routinely handled a number of cases involving its former partners and associates without complaint from anyone. Some of those former partners have won their cases, and others have lost.[1] In fact, to suggest that the Court has any partiality for any of its former partners is utterly unsupportable given that the Court has often demonstrated its complete independence and the absence of any partiality or favoritism toward its former law firm. Mr. Vickery himself was recently successful in appealing this Court's judgment against one of his clients to the Fifth Circuit Court of Appeals, obtaining a reversal. *See Galveston County Navigation District No. 1 v. Hopson Towing Co.*, 92 F.3d 353 (5th Cir.1996).

Defendant's first contention that the appearance of impropriety has been raised by the fact that the Court is a former law partner of Plaintiff's counsel, Mr. Vickery, does not require recusal. Defendant itself even acknowledges that this fact does not require recusal. Furthermore, applying the *Liljeberg/Jordan* extrajudicial source standard, a reasonable person, knowing all of the facts discussed above, would not harbor doubts concerning this Court's impartiality.

■ Second, there are no actual instances of apparent partiality in the conduct of this case which militate in favor of recusal. The Defendant points to a mere compliment made by the Court to Plaintiff's counsel based upon its prior professional experience. Specifically, in its Order of August 12, 1996, the Court, in a footnote regarding an alleged infraction of the Local Rules for the South-

ern District of Texas, referred to Mr. Vickery as a "bastion of honesty and integrity." The Defendant asserts that the Court improperly relied on this opinion in denying Defendant's Motion to Transfer. First, this argument is undercut by the fact that this Court set out extensively and specifically the reasons for its denial of transfer and none of those reasons had anything to do with the Court's perception of counsel. Second, the Court observes that judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *Liteky*, 510 U.S. at 555, 114 S.Ct. at 1157; *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). Moreover, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases ordinarily do not support a partiality challenge. *Liteky*, 510 U.S. at 555, 114 S.Ct. at 1157. Likewise, compliments in the course of legal proceedings should not ordinarily support a partiality challenge.

■ As a matter of policy, any other rule would place intolerable restraints on the judiciary in its relationship and interactions with the Bar. The judiciary must have the ability to inspire the Bar through the use of compliments when they are justified in the same way it offers criticism when justified as a method of control. This Court *routinely* expresses compliments and criticisms to numerous attorneys in the management of its considerable docket obligations. In this case, the fact that Mr. Vickery considers the Court to be a good jurist or that the Court considers Mr. Vickery to be an honest attorney has nothing to do with the fact that each often sees the world through very different eyes, as evidenced by the Fifth Circuit's recent reversal in *Galveston County Navigation District*, 92 F.3d at 353. Furthermore, just because the Court believes an attorney to be *honest* does not mean that the Court believes that attorney to be *right*. Moreover, the Court is hardly alone amongst Texas jurists in perceiving Mr. Vickery as honest. He has, for literally 50 years, demeaned himself

---

1. Only two cases have been tried to the Court without a jury in which this Court rendered written decisions. This Court's decisions result- ed in judgments *against* RRV & W clients in both cases. Both were reversed on appeal to the extent they were found to be incorrect.

with high integrity. For this or any other Court to be constrained from complimenting such venerable efforts, for fear of perceived partiality is, in this Court's respectful opinion, preposterous. Therefore, the Defendant's second contention fails to support its argument that there has been any apparent partiality in this case that militates in favor of recusal.[2]

■■■ Third, Defendant argues that the apparent partiality—the Court's opinion that Mr. Vickery is honest—stems from an extrajudicial source—the former partnership. This argument is merely a fusion of Defendant's first two arguments. The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a sufficient condition for recusal on the basis of bias or prejudice. *Liteky*, 510 U.S. at 554, 114 S.Ct. at 1157. In any event, under the *Liljeberg/Jordan* standard, if the alleged partiality stems from a source other than a judicial proceeding, such as a former partnership, a judge must recuse himself if a reasonable person, knowing all of the facts, *would* harbor doubts concerning the judge's impartiality. *Liljeberg*, 486 U.S. at 860–61, 108 S.Ct. at 2203; *Jordan*, 49 F.3d at 155. Thus, as discussed above, Defendant's third factor does not support recusal under this objective test. Moreover, given the commonality of the perception of Mr. Vickery's professional attributes, under Defendant's distorted recusal test, neither he nor any older attorney enjoying a good reputation would be entitled to appear before *any* Court.

Finally, the Defendant alleges that the fact that the Plaintiff chose to file this action in Galveston, while a related suit was pending in Dallas, requires recusal. Here, the Defendant simply rehashes many of the arguments made in its Motion to Dismiss, Stay or Transfer this case to Dallas, which was denied by the Court in August. As these allegations arise out of the proceedings in this case, the impossibility of fair judgment test of *Liteky* is applicable here. *Jordan*, 49 F.3d at 155 n. 3. *See also Liteky*, 510 U.S. at 555, 114 S.Ct. at 1157.

None of the evidence produced by the Defendant reveals such a high degree of favoritism or antagonism as to make fair judgment impossible. As to the impropriety of Mr. Vickery's choice of forum, Galveston is next to a city of over four million people and more than thirteen thousand attorneys. A casual examination of this Court's docket throughout its entire tenure will reveal that most of its cases are filed by Houston attorneys, not Galveston attorneys. The fact that plaintiffs have won only 51% of the cases tried before this Court, that there is a complete lack of runaway verdicts, and that there are relatively few motions to transfer filed by Defendants in a Court with one of the highest annual civil filing rates in the nation suggests that people choose Galveston as a forum because of the Court's proven track record of being fast, highly efficient, and fair.

Specifically, in this case, the Defendant claims that Mr. Vickery's filing was improper because the facts of this case have nothing to do with Galveston. This contention, of course, ignores that the facts of this case arise in Houston, only 50 miles away. However, Defendant filed its case in Dallas, over 250 miles away from Houston, presumably because Defendant's counsel felt that there would be benefits for Oryx in filing in Dallas, the Court where he routinely appears. The Court sees nothing wrong with the venue selection in the latter case and equally infers nothing sinister in the former. Moreover, had the learned Judge Solis thought that there was any impropriety in Mr. Vickery's actions, he would have undoubtedly articulated that concern rather than transferring the Defendant's prior-filed Dallas action to *this* Court for consolidation.

Therefore, for the reasons stated above, the Court holds that a reasonable person, knowing all of the facts, would not harbor doubts concerning the Court's impartiality in this case. Furthermore, the Court's actions throughout the course of these proceedings do not reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. As noted above, at the hearing on October 2, 1996, the Court expressly made

---

**2.** The Court does feel some sardonic amusement that counsel could seriously suggest that he is prejudiced because he faces an adversary the Court believes to be honest. . . .

an offer to transfer this Motion to Recuse to the Chief Judge of the Southern District of Texas for resolution. Counsel declined that offer. Thus, for the reasons at length discussed above, the Defendant's Motion to recuse is hereby DENIED.

IT IS SO ORDERED.