Beatrice D. DOLPHIN *v.* Henrietta J. WILSON and Jimmie L. Wilson

96-631                                        942 S.W.2d 815

Supreme Court of Arkansas
Opinion delivered April 7, 1997
[Petition for rehearing denied May 12, 1997.*]

---

* Special Justices WM. LEE FERGUS, LEON HOLMES, and JOHN C. LESSEL join. NEWBERN, GLAZE, and CORBIN, JJ., not participating.

*David Solomon*, for appellant.

*Wilson Law Firm, P.A.*, by: *E. Dion Wilson*, for appellees.

W.H. "Dub" Arnold, Chief Justice. The case concerns an alleged oral contract for the sale of land. The appellees, Jimmie L. Wilson and Henrietta J. Wilson, filed suit for specific performance against appellant Beatrice D. Dolphin. The chancellor ruled in favor of the Wilsons, and Mrs. Dolphin appeals, raising two issues. The first question presented is whether the chancellor, a former law partner of Mr. Wilson's, should have recused from the case. The second issue is whether the complaint for specific performance was barred by the statute of frauds. Because we disagree with the chancellor's conclusion that the proof of the alleged agreement was clear and convincing, we hold that the complaint was barred by the statute of frauds, and reverse and remand.

Mrs. Dolphin and her late husband owned approximately 22 acres of farm land in Phillips County. It was heavily encumbered by over $300,000.00 in liens. The great majority of the encumbrance was due to farm loans made by the Farmers Home Administration. Mrs. Dolphin left the Phillips County area in 1988 and had very little to do with the land thereafter.

On April 5, 1994, the FmHA obtained a judgment in the amount of about $271,000.00 as the result of an *in rem* foreclosure action filed in federal district court. The land was set to be sold at public auction when Mr. Wilson, an attorney, saw the auction notice in the newspaper and contacted Mrs. Dolphin in Ohio the week before the auction. At this point, Mrs. Dolphin and the Wilsons offer conflicting accounts of what happened. According to Mr. Wilson, Mrs. Dolphin agreed that, if he could purchase the land in her name for its appraised value, approximately $13,000.00, and if he could clear up all outstanding indebtedness, she would deed the land to him. However, when it came time to sign the deed, Mrs. Dolphin refused. Mrs. Dolphin denies the existence of an agreement.

### 1. Recusal

We first consider the question of whether the chancellor should have recused from the case. After the Wilsons filed their complaint for specific performance, Mrs. Dolphin filed a motion asking Chancellor Kathleen Bell to recuse. The basis of the

motion was that Mr. Wilson was Judge Bell's law partner from 1981 to 1989. The motion also stated that Judge Bell's name remained listed in the yellow pages of the Helena-West Helena telephone directory as an attorney in private practice with the same address and phone number as listed for Mr. Wilson.

On appeal, Mrs. Dolphin argues that the chancellor's failure to recuse violates Canon 1, Canon 2(a), and Canon 3(e) of the Arkansas Code of Judicial Conduct. Canon 1 is general in nature, requiring a judge to uphold the integrity and independence of the judiciary. Canon 2(a) requires a judge to avoid impropriety and the appearance of impropriety. Canon 3(e) requires a judge to disqualify herself in a proceeding in which her impartiality might reasonably be questioned, including where the judge has a personal bias or prejudice concerning a party or a party's lawyer.

Judges must refrain from presiding over cases in which they might be interested and must avoid all appearance of bias. *Reel v. State*, 318 Ark. 565, 886 S.W.2d 615 (1994). However, we will not reverse a judgment on the basis of a trial judge's decision not to disqualify unless the judge has abused her discretion. *Id.* To decide whether there was an abuse of discretion, we review the record to determine if any prejudice or bias was exhibited. *Id.* The question of bias is usually confined to the conscience of the judge. *Noland v. Noland*, 326 Ark. 617, 932 S.W.2d 341 (1996). Judges are presumed to be impartial, and the party seeking disqualification has the burden of showing otherwise. *Turner v. State*, 325 Ark. 237, 926 S.W.2d 843 (1996).

Mrs. Dolphin did not mention Canon 1 at the trial level, so we will not address this portion of her argument for the first time on appeal. *Douthitt v. Douthitt*, 326 Ark. 372, 930 S.W.2d 371 (1996). Canons 2(a) and 3(e), also relied on by Mrs. Dolphin, do not address the situation in which a judge is a former law partner of an attorney who is before the judge. We are aware, however, of one federal district court case from Arkansas holding that a judge is not required to disqualify if a former law partner is counsel in the proceeding. *Katz v. Looney*, 733 F.Supp. 1284 (W.D. Ark. 1990). Cases from other jurisdictions have held likewise. *Singer v. Wadman*, 745 F.2d 606 (10th Cir. 1984), *cert denied*,

470 U.S. 1028 (1985); *Certain Underwriters at Lloyds, London v. Oryx Energy Co.*, 944 F. Supp. 566 (S.D. Tex. 1996); *Miller Industries, Inc., v Caterpillar Tractor Co.*, 516 F.Supp. 84 (S.D. Ala. 1980), *affirmed*, 733 F.2d 813 (11th Cir. 1984); *Bonelli v. Bonelli*, 570 A.2d 189 (Conn. 1990); *Hall v. Hall*, 247 S.E.2d 754 (Ga. 1978).

■ It does concern us that, in this case, Mr. Wilson is not appearing as an attorney, but as the party seeking specific performance of an alleged oral contract. However, no hearing was held on the issue of recusal, and none was requested. The decision on the part of a judge not to recuse is affirmed when there is no abuse of discretion. *Reel v. State, supra*. Mrs. Dolphin did nothing more on this issue than file a motion making the assertions described above, and the chancellor denied the motion without comment, so we have little information in the record. Because Mrs. Dolphin has not met her burden of proving that Judge Bell was biased, we must conclude that the chancellor did not abuse her discretion in failing to recuse from the case. We add, however, that the recusal issue was not well developed in this case. We do not foreclose the possibility that the outcome might be different in another case with a better-developed record.

## 2. Specific performance of an oral contract to sell land

We next consider whether the Wilsons' complaint for specific performance was barred by the statute of frauds. In a letter opinion, the chancellor ruled in favor of the Wilsons and granted the petition for specific performance. The chancellor found that, by clear and convincing proof, the terms of the oral contract had been proven. She also required the Wilsons to reimburse Mrs. Dolphin for the 1994 taxes she paid on the land.

■ Contracts for the sale of lands must be in writing to be enforceable. Ark. Code Ann. § 4-59-101(a)(4) (Repl. 1996). There is no allegation in this case that a written agreement exists. Instead, Mr. Wilson claims that his payment for the land and his assumption of possession took the contract out of the operation of the statute of frauds. However, to take an oral contract out of the statute of frauds, both the making of the oral contract and its performance must be proven by clear and convincing evidence.

*French v Castleberry*, 238 Ark. 1038, 386 S.W.2d 482 (1965); *Pfeifer v Raper*, 253 Ark. 438, 486 S.W.2d 524 (1972).

The trial in this case primarily consisted of the competing testimonies of Mr. Wilson and Mrs. Dolphin. According to Mr. Wilson, Mrs. Dolphin told him that she owed so much money on the property that she could not do anything about the public sale. It was Mr. Wilson's testimony that Mrs. Dolphin agreed that, if he could get the indebtedness satisfied and could pay for the land to keep it from being sold at auction, she would deed the land to him. According to Mrs. Dolphin, she told Mr. Wilson that he could "look into" the sale of the property. However, she testified that she specifically told him that he could not purchase the land in her name. She denied the existence of any agreement to deed the property to the Wilsons.

The only written evidence of communications between the parties is a facsimile that was sent from Mrs. Dolphin to Mr. Wilson on May 18, 1994. Mr. Wilson had told Mrs. Dolphin that he needed her authorization to obtain information from the FmHA about the indebtedness on the property. The one-page fax that Mrs. Dolphin sent read, according to her, as follows:

> This is to certify that I, Beatrice Dolphin, authorize Jimmie L. Wilson, to obtain information relating to the sale of my property located at Lakeview (Phillips County Arkansas).
> Past due monetary amounts are not to be dispensed with.
> s/Beatrice Dolphin    NOTARIZED

The record reflects that this exhibit is an original with a raised notary seal. Mr. Wilson denies that the sentence relating to past-due monetary amounts was included.

After receiving the fax, Mr. Wilson sent a letter to the FmHA on his law firm's letterhead, in which he stated that Ms. Dolphin had contacted his office and had asked that he determine the appraised value of the property. The letter referenced the *in rem* action in federal district court, and stated that Mr. Wilson's representation in the matter was limited to tendering the settlement to FmHA. However, at trial, Mr. Wilson testified that he did not represent Mrs. Dolphin as an attorney. Attached to Mr. Wilson's letter to the FmHA was a copy of Mrs. Dolphin's May

18, 1994, fax; however, this authorization did not contain the sentence, "[p]ast due monetary amounts are not to be dispensed with."

On May 24, 1994, one day before the auction, Mr. and Mrs. Wilson sent checks to the FmHA in the amount of $13,200.00 for the property, and $1,239.40 for costs. These payments stopped the public sale of the property, and resulted in a satisfaction of judgment being entered on the FmHA's foreclosure action in federal court. The Wilsons then began work on trying to reduce the $300,000.00 indebtedness on the property. Unbeknownst to them, Mrs. Dolphin was working on her own, during this same period, to get her debt forgiven. She filed a formal application for settlement on August 16, 1994, and the FmHA issued a satisfaction on August 17, 1994. On August 18, 1994, the FmHA county supervisor recommended that Mrs. Dolphin's debt be cancelled. The FmHA approved the cancellation of the debt on May 2, 1995.

Once the debt was satisfied, Mr. Wilson sent a warranty deed to Mrs. Dolphin so she could sign the property over to him. He also began to work on the land. He tried to clean up the property, and drained the back part of the land. He hired the city to mow the property a few times. He had someone disc the land, and he allowed others to plant a crop on part of the parcel. Sometime thereafter, he received notice from Mrs. Dolphin's attorney that she would not sign the warranty deed.

The factors that point to the making of the contract and its performance include the following. The Wilsons paid the appraised value of the land, and worked to remove the indebtedness from the land. After the debt was satisfied, the Wilsons performed maintenance on the land and allowed a crop to be planted on a part of it. Finally, the Wilsons prepared a warranty deed for Mrs. Dolphin to sign.

The cases of French v. Castleberry, supra, and Pfeifer v. Raper, supra, are instructive. Both involved tenants who claimed that their landlord had orally agreed to sell them the land which was the subject of their tenancy. In each case, the tenants claimed to have made improvements on the land in reliance on the oral

contract. We observed in both cases that the improvements were of the type that might ordinarily be made by tenants. *French*, 238 Ark. at 1040; *Pfeifer*, 253 Ark. at 440. We also noted that, to satisfy the statute of frauds, the improvements must be so valuable and substantial that it would be inequitable to refuse specific performance. *Id.*; *Blanton v. First Nat'l Bank of Forrest City*, 136 Ark. 441, 206 S.W. 745 (1918).

■ The improvements (mowing, discing to keep down the weeds, and bulldozing debris from a burned building into a pile) by the Wilsons in this case essentially amounted to maintenance. They are the type of maintenance an agent will do for an absentee landowner and hence are consistent with Mr. Wilson's representation to the FmHA that he was acting as Mrs. Dolphin's agent. For that matter, Mr. Wilson testified that he had known Mrs. Dolphin all of his life, and this type of maintenance could easily be done by a long-time friend of an absentee landowner. These acts are not "unequivocally referable to the agreement"; they are not "unintelligible or extraordinary unless as an incident of ownership." 1 E. ALLEN FARNSWORTH, FARNSWORTH ON CONTRACTS § 6.9, at p. 442, & n. 11 (1990), *quoting Burns v. McCormick*, 135 N.E.373 (N.Y. 1922). Thus, the only evidence of an agreement in this case is the Wilsons' payment for the land, in Dolphin's name, and the maintenance of the property. When examining this evidence, we must conclude that it "lacks the clarity and cogency that the law demands." *French*, 238 Ark. at 1039. When looking at the countervailing evidence on behalf of Mrs. Dolphin, the written evidence that she offered reflects that she only authorized Mr. Wilson to obtain information relating to the sale of her property. She also continued her own efforts to cancel the indebtedness on the land, and paid taxes on the land in 1994. When considering all the evidence, we conclude that the chancellor clearly erred in finding that there was clear and convincing evidence that an agreement existed between the parties. Under these circumstances, we hold that the Wilsons' complaint was barred by the statute of frauds, and reverse and remand for entry of an order consistent with this opinion.

Reversed and remanded.

NEWBERN, GLAZE, and CORBIN, JJ., not participating.

Special Justices WILLIAM LEE FERGUS, LEON HOLMES, and JOHN C. LESSEL, join in this opinion.

THORNTON, J., dissents.

RAY THORNTON, Justice, dissenting. I agree with the majority opinion that Chancellor Bell did not commit reversible error by not recusing from this case. As noted in the opinion, the record reveals no indication or expression of bias on the part of the chancellor. However, I must respectfully dissent from the majority decision that the chancellor erred in finding that there was an oral contract between Beatrice Dolphin and Jimmie L. Wilson whereby she would convey her interest in the land to Mr. Wilson in return for his efforts in stopping a foreclosure sale by paying the appraised value of the real property and effectively negotiating settlements of the outstanding debts owed on the land.

As the majority points out, in order to take an oral contract to convey land out of the statute of frauds, both the making of the oral contract and its performance must be proven by clear and convincing evidence. *French v. Castleberry*, 238 Ark. 1038, 386 S.W.2d 485 (1965). As we recently stated in *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996): "In reviewing chancery cases, we consider the evidence de novo, but will not reverse a chancellor's findings unless they are clearly erroneous or clearly against the preponderance of the evidence." *Id.* at 487, 931 S.W.2d at 770; *see also McGarrah v. McGarrah*, 325 Ark. 81, 924 S.W.2d 260 (1995). Because the chancellor is in a superior position to judge the credibility of the witnesses, this court gives deference to the trial court's findings of fact unless the appellant can demonstrate that the chancellor abused her discretion by making a decision that was arbitrary or groundless. *Holaday v. Fraker*, 323 Ark. 522, 915 S.W.2d 280 (1996).

As in most cases where the existence of a contract is in dispute, the testimony of the parties in the case before us is contradictory; the decision whether a contract existed addresses itself to the sound discretion of the judge who hears the testimony, considers documentary evidence, and determines factual issues such as whether and to whom payment was made, and whether possession

was assumed. Based upon substantial evidence presented at the trial, the chancellor found that Mrs. Dolphin's farm had become heavily encumbered by debt, and that after her husband's death in 1988 she took no action to stop a foreclosure proceeding scheduled for May 25, 1994, or to discharge the debt. For all intents and purposes, she had written off the land and the debt.

The chancellor considered Mr. Wilson's testimony that Mrs. Dolphin agreed to sell him the property if he could get the indebtedness satisfied and prevent the public auction by paying the appraised purchase price of FmHA. The chancellor then made the following specific findings:

> Upon reaching this agreement with Respondent, Wilson then contacted the County Supervisor . . . [and] was informed, by letter dated May 20, 1994, of the procedure required to eliminate the public sale of the property. As the result of this letter, Wilson caused to be issued two cashiers checks, both dated May 24, 1994 . . . as follows:
>
> 1. Department of Justice — $1239.40; and
>
> 2. Farmers Home Administration — $13200.00.
>
> The satisfaction of the judgment was filed June 7, 1994 and forwarded to Wilson.
>
> Wilson also engaged the services of a farmers' organization directed by Calvin King, Arkansas Land and Farm Development Corporation. That organization engaged in mediation efforts with the state and national offices of FmHA. As the result, the mortgages reflecting the outstanding indebtedness of this Respondent were satisfied on August 17, 1994. This satisfaction was forwarded to Wilson.
>
> . . . .
>
> After the satisfactions were received, Petitioners [the Wilsons] assumed possession of the real property in question. The acts of possession of the Petitioners consisted of having the grass mowed at least 4 times by the City of Lakeview; had the land disced; hired someone to bulldoze debris; and had the back of the property drained . . . . Wilson then forwarded to [Mrs. Dolphin] the satisfaction referred to previously and a proposed deed. . . .

The majority refers to the cases of *French v. Castleberry, supra,* and *Pfeifer v. Raper,* 253 Ark. 438, 486 S.W.2d 524 (1972), where

we observed that similar improvements made by *tenants* were insufficient to take an alleged oral agreement to convey the land out of the statute of frauds because such improvements were of the type that might ordinarily be made by *tenants*. However, Mr. Wilson had no right to be on the land as a tenant. His claim to possession was pursuant to the oral agreement that he testified he and Mrs. Dolphin had entered into.

We have noted that to take a contract out of the statute of frauds, the improvements must be so valuable and substantial that it would be inequitable to refuse specific performance. *Id.*; *Blanton v. First Nat'l Bank of Forrest City*, 136 Ark. 441, 206 S.W. 745 (1918). Certainly the clear and convincing evidence is that Mr. Wilson made very valuable and substantial improvements to the property. He redeemed it from foreclosure and took action to assist in the satisfaction of the other debts. He also took possession of the property and made improvements including bulldozing and draining parts of the realty.

When deference is given to the chancellor's findings of fact in this case, it does not appear that those findings are clearly erroneous or clearly against a preponderance of the evidence. The chancellor weighed the evidence, evaluated the credibility of the witnesses, and decided that clear and convincing evidence proved the existence of an oral contract to convey real property, and that Mr. Wilson's assumption of possession and making of improvements took the contract out of the operation of the statute of frauds.

I would affirm the chancellor's order granting specific performance, and for that reason, I must respectfully dissent.