# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

No. 97-3979

Mann Brothers Logging, Inc.    *
             *
      Appellee,    *
             * Appeal from the United States
   v.         * District Court for the
             * Western District of Arkansas.
Potlatch Corporation,     *
             *
      Appellant.   *

Submitted: May 13, 1998

Filed:  July 9, 1998

Before BOWMAN, Chief Judge, HEANEY and HANSEN, Circuit Judges.

HEANEY, Circuit Judge.

  Potlatch Corporation (Potlatch) appeals from a jury verdict awarding Mann Brothers Logging, Inc. (Mann Brothers) $240,000 for breach of an oral contract. Potlatch challenges the district court's jury instructions concerning the elements of contract formation and whether the contract could be for a reasonable duration; the sufficiency of the evidence as it relates to whether there was an oral contract; and the jury's damage award.  We affirm.

At trial the parties presented the following evidence: On October 1, 1991, Potlatch's woodlands manager for Arkansas, Dr. Bill Pope, decided to hire Mann Brothers as an independent logging contractor. According to Pope, Potlatch was interested in developing long-term relationships with its independent contractors. Because Mann Brothers was a relatively small operation, Pope recognized that Mann Brothers would have to make additional hires and purchase more equipment in order to supply Potlatch with the logging services it required. On October 21, 1991, Mann Brothers signed a written contract with Potlatch providing that Mann Brothers would provide logging services to Potlatch until December 31, 1991. According to Pope, the purpose of the short-term contract was to establish a formal relationship with Mann Brothers and to outline Mann Brothers' job responsibilities, including cutting, skidding and hauling logs. The contract also covered indemnification issues. According to Pope, the parties did not intend for the written contract to dictate the ultimate length of Mann Brothers' work. Rather, the primary purpose of the written contract was to ensure that Mann Brothers complied with insurance requirements.

In February 1992, Pope and Mark Mann (Mann), one of Mann Brothers' partners, discussed Mann Brothers future relationship with Potlatch. Pope assured Mann that if Mann Brothers invested in equipment, Potlatch and Mann Brothers would have a long-term relationship. In turn, Mann Brothers assured Potlatch that it would be available full-time and year-round. Shortly after Mann and Pope met, Mann Brothers purchased equipment, including an additional loader.

Throughout 1992 and 1993, Pope repeatedly assured Mann Brothers that its equipment purchases were justified and reconfirmed that Potlatch would provide years of work for Mann Brothers. Mann Brothers continued to assure Potlatch that it would be available full-time and year-round. During the same period, Pope informed Potlatch's independent contractors, including Mann Brothers, that there would continue

to be increased production and an increased need for logs. In response, Mann Brothers bought an additional skidder in the spring of 1993 to increase its production.

Potlatch opened a new logging mill in January 1994. After Potlatch again assured Mann Brothers that there was sufficient work in the future, Mann Brothers purchased more logging equipment. In May 1994, Potlatch informed Mann Brothers that it needed to purchase an additional dozer to enhance production. After a tour of the new Potlatch logging mill in September 1994, Mann Brothers purchased a loader in order to maximize production. Mann testified that, when Pope confirmed that there would be years of work for Mann Brothers, he assumed Pope meant at least 4 or 5 years based on the amount and cost of the equipment Pope suggested Mann Brothers purchase.

Pope left Potlatch in June 1994. On December 9, 1994, Potlatch terminated Mann Brothers, effective December 31, 1994. Pope stated that if he had stayed at Potlatch, he would have honored the oral agreement he believed Potlatch had with Mann Brothers. Pope also testified that it was customary in the timber industry to make oral contracts and to memorialize such agreements with a hand shake. Pope acknowledged that the fact Potlatch terminated its relationship with Mann Brothers in the winter made it extremely difficult for Mann Brothers to find work.

Mann Brothers was forced to sell its logging equipment from which the proceeds were applied to its outstanding bank debt. In addition, Mann Brothers' certified public accountant, Ricky Mercer, testified that Mann Brothers had lost profits of $389,140 for the relevant time period, although the lost profits were off-set by other income earned by Mann Brothers after Mann Brothers was terminated. Following the trial, the jury returned a verdict in favor of Mann Brothers on its breach of contract claim and awarded damages of $240,000. Potlatch now appeals.

3

II.

Potlatch challenges certain jury instructions, the sufficiency of the evidence as to whether there was an oral contract, and the jury's damage award. Potlatch first argues that the district court erred by failing to instruct the jury on the elements and formation of a contract. We review jury instructions for an abuse of discretion. Klisch v. MeritCare Med. Group, 134 F.3d 1356, 1358 (8th Cir. 1998). "When reviewing jury instructions, this court's review is limited to whether the instructions, viewed on the whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." Id. (citation omitted)

In this case, the district court instructed the jury that there "must be an offer by one side that is accepted and agreed to by the other." (Appellant's App. at 493.) The district court's jury instruction is consistent with the instruction approved of in Crain Industries, Inc. v. Cass, 810 S.W.2d 910, 915-16 (Ark. 1991).[1] Crain counsels that a proper contract instruction communicates an "objective theory" of contract law. Id. at 916 (citation omitted). We believe that the district court provided an "objective theory" of contract law under Arkansas law and did not abuse use its discretion. Having reviewed the jury instructions, on the whole, we conclude that they fairly and accurately represent the evidence and applicable Arkansas law in light of the issues presented to the jury.

Potlatch next argues that the district court erred when it provided the following jury instruction:

In Crain Industries, Inc. v. Cass, 810 S.W.2d 910 (Ark. 1991), the Arkansas Supreme Court reviewed trial court instructions to determine whether a jury had been properly charged as to the elements and formation of a contract under Arkansas law. Id. at 915. In Crain, the court approved a jury instruction that said "manifestation of mutual assent to the terms and conditions of the contract" must be demonstrated. Id. at 915-16.

4

> Where a contract contains no express agreement as to how long it will last, a reasonable duration may be implied by the nature of the contract or from the surrounding circumstances. The law does say not specifically how long would be reasonable. That's for you to decide. When a contract fixes no time for its duration, and none can be implied by the nature of the contract and surrounding circumstances, the contract may be terminated at the will of either party.

(Appellant's App. at 495.) Specifically, Potlatch argues that the district court erred by instructing the jury that it could infer a reasonable duration to the oral contract. Potlatch cites several cases holding that a contract of indefinite duration may be terminated at will. See, e.g., Union Nat'l Bank v. Federal Nat'l Mortgage Ass'n, 860 F.2d 847, 853 (8th Cir. 1988) (holding that traditional commercial contract provided for termination at will under Arkansas law); Gary Braswell & Assocs. v. Piedmont Indust., Inc., 773 F.2d 987, 989 (8th Cir. 1985) (under Arkansas law, only a contract of an indefinite duration may be terminated at will); Griffin v. Erickson, 642 S.W.2d 308, 310 (Ark. 1982) (holding that an employment contract of an indefinite duration is terminable at will); Delony v. Rucker, 302 S.W.2d 287, 290 (Ark. 1957) (holding that a contract of an indefinite duration is terminable at will).

Although Mann Brothers agrees with the district court's instruction that contracts of an indefinite duration are terminable at will, it cites Jefferson Smurfit Corp. v. Hopkins, 894 S.W.2d 951 (Ark. App. 1995), for the proposition that where there is an issue of fact as to whether an oral agreement contains a reasonable duration, it is inappropriate for the court to find as a matter of law that a contract is terminable at will. Id. at 952. We agree. Thus, when it is unclear from the record that a contract is for an indefinite duration, "[w]hether justification exists for termination of the contract under the facts and circumstances of a particular case is usually a question of fact." Joshua v. McBride, 716 S.W.2d 215, 218 (Ark. App. 1986) (citation omitted). See also Gary Braswell, 773 F.2d at 989 (holding that where an oral contract was removed from the statute of frauds by clear and convincing evidence, under Arkansas law, the defendant

5

could not "terminate the contract at its will. Only a contract of indefinite duration may be so terminated") (citing Griffin v. Erickson, 642 S.W.2d 308, 310 (Ark. 1982)).

In this case, Potlatch made several representations to Mann Brothers that it wanted to enter into a long-term relationship and promised that there were years of work available. Based on Potlatch's representations, Mann Brothers believed 4 or 5 years of work was available and it made several equipment purchases so that it would be available to Potlatch full-time and year-round. Unlike the traditional at-will employment relationship, the record in this case reveals that there was a fact issue as to how long Potlatch and Mann Brothers would continue a working relationship. Therefore, we hold that the district court did not abuse its discretion in offering the challenged jury instruction.

Potlatch next argues that, based on the evidence presented at trial, the district court erred by denying Potlatch's motion for judgment as a matter of law (JAML) as to whether Potlatch and Mann Brothers entered into an oral agreement. We review de novo a denial of a JAML motion based on the sufficiency of the evidence, applying the same standard as the district court. Triton Corp. v. Hardrives, Inc., 85 F.3d 343, 345 (8th Cir. 1996) (citation omitted). Under this standard, we resolve all conflicts in favor of Mann Brothers and will reverse only if no reasonable jury could have found for Mann Brothers. Id. We do not evaluate, consider or weigh the credibility of the evidence and we will not set aside a jury's verdict lightly. Id. (citation omitted).

Under the Arkansas statute of frauds, contracts that are not to be performed within one year from the contract's making must be in writing in order to be enforceable. Ark. Code Ann. § 4-59-101(a)(6). "[T]o take an oral contract out of the statute of frauds, both the making of the oral contract and its performance must be proven by clear and convincing evidence." Dolphin v. Wilson, 942 S.W.2d 815, 818 (Ark. 1997).

Pope testified that it was common in the logging industry for business to be done with a hand shake and he did not believe that he needed to memorialize his conversations with Mann Brothers in a written contract. He also testified that he honored his word and had intended to enter into a long-term agreement with Mann Brothers by promising years of work. Mann Brothers also intended to enter into a long-term relationship with Potlatch and had agreed to be available year-round and on a full-time basis. Moreover, based on Pope's representations, Mann Brothers made significant equipment purchases that would enable Mann Brothers to perform the years of work expected by Potlatch. Based on the level and cost of the equipment purchases, Mann Brothers believed that at least 4 or 5 years of work was expected by Potlatch. In our view, sufficient evidence supports the jury's finding of an oral contract and sufficient performance to take it out of the statute of frauds.

Finally, Potlatch challenges the jury award of $240,000 in lost profits to Mann Brothers. Having carefully reviewed the record and the parties' submissions, we conclude that there is no reason to disturb the jury's damage award.

III.

For the reasons stated above, we affirm.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.